The appellant, Harold V. Stallings, was convicted of first-degree robbery, a violation of § 13A-8-41(a)(1), Ala. Code 1975. Pursuant to the Habitual Felony Offender Act, the trial court sentenced him to imprisonment for life without the possibility of parole. See § 13A-5-9(c)(3), Ala. Code 1975. The appellant filed a motion for a new trial, which the trial court denied after conducting a hearing. This appeal followed.
 I.
The appellant argues that the State did not present sufficient evidence to support his conviction. Specifically, he contends that the State did not establish that he was armed or represented that he was armed during the robbery. Section13A-8-41, Ala. Code 1975, provides, in pertinent part:
 "(a) A person commits the crime of robbery in the first degree if he violates Section 13A-8-43 and he:
 "(1) Is armed with a deadly weapon or dangerous instrument; or
 "(2) Causes serious physical injury to another.
 "(b) Possession then and there of an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument, or any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence under subsection (a) of this section that he was so armed."
Section 13A-8-43, Ala. Code 1975, provides, in pertinent part:
 "(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
 "(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or
 "(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property."
In Porter v. State, 666 So.2d 106, 108 (Ala.Crim.App. 1995), we held:
 "`In a prosecution for first degree robbery, the robbery victim does not actually have to see a weapon to establish the element of force; his or her reasonable belief that the robber is armed is sufficient. Dinkins v. State, 584 So.2d 932
(Ala.Cr.App. 1991); Breedlove v. State, 482 So.2d 1277
(Ala.Cr.App. 1985). The test to determine whether a person reasonably believes that an object is a deadly weapon is a "subjective" one. James v. State, 549 So.2d 562 (Ala.Cr.App. 1989). "It focuses on the `reaction of the victim to the threats of the robber.' State v. Hopson, 122 Wis.2d 395, 362 N.W.2d 166, 169 (1984)." 482 So.2d at 1281.'
"Rice v. State, 620 So.2d 140, 141-2 (Ala.Cr.App. 1993)."
The evidence showed that, on March 26, 1998, Raymond Lamar Osborne was working as a cashier at the U.S.A. Petroleum gas station on Highway 280 in Russell County, Alabama. At approximately 4:15 a.m., the appellant drove into the parking lot and told Osborne he wanted a pack of cigarettes. Osborne testified that the following occurred thereafter:
 "Generally, I would step to the door and ask, but he was speaking kind of *Page 869 
low, so I had to step onto the stoop so I could hear him.
". . . .
 "[The appellant asked for a] pack of Dorals. I said, `What kind, full flavor, light, shorts, menthol, 100s?'
"He said menthol shorts.
". . . .
 "I turned around and went back in and pulled the Dorals out of the overhead rack. I walked back out the door and I handed them to him. I said $1.10 and I handed them to him. He gave me $1.10. I come in and hit Doral on the key, all total, $1.10, opened the drawer. I dropped the dollar in and put the dime in and closed it. That is when I felt him put something in my side, and he said, `Give me the money.'
 "And I looked at him like `Huh?' And he said, `Give me fucking money. I ain't playing.'"
(R. 18.) Osborne then opened the cash register, put his hands beside it, and allowed the appellant to take the money out of it. Osborne subsequently testified that, although he did not see a gun, he believed the "something" the appellant put in his side may have been a gun.
From the evidence presented, the jury could have concluded that Osborne reasonably believed that the appellant had placed a gun in his side. See Porter, supra; § 13A-8-41(b), Ala. Code 1975. Therefore, the State presented sufficient evidence to establish that the appellant was armed or represented that he was armed during the offense. Accordingly, the appellant's argument is without merit.
 II.
The appellant also argues that his trial counsel rendered ineffective assistance because he did not file a pretrial motion to suppress identification evidence and because he did not subpoena a certain witness to testify at trial. Although it conducted a hearing on the appellant's motion for a new trial, the trial court did not make specific findings of fact regarding each claim the appellant raised during that hearing. Therefore, the attorney general asks that we remand this case to the trial court for that court to make specific findings of fact concerning the arguments made during the hearing on the appellant's motion for a new trial. "Because the trial court presided over the trial and the hearing on the motion for a new trial, we believe that that court is in the best position to make findings of fact regarding the appellant's claims." Tubbs v. State, 753 So.2d 1209, 1210
(Ala.Crim.App. 1999). Accordingly, we remand this case to the trial court with instructions that it make specific, written findings of fact regarding the ineffective-assistance-of-counsel claims the appellant raised during the hearing on his motion for a new trial. The trial court shall take all necessary action to see that the circuit clerk makes due return to this court at the earliest possible time and within 28 days after the release of this opinion. The return to remand shall include a transcript of the remand proceedings, if any, conducted by the trial court and the trial court's specific, written findings of fact.
REMANDED WITH INSTRUCTIONS.*
Long, P.J., and McMillan, Cobb, and Fry, JJ., concur.
* Note from the reporter of decisions: On August 18, 2000, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On September 15, 2000, that court denied rehearing, without opinion. On February 9, 2001, the Supreme Court denied certiorari review, without opinion (1000024). *Page 870